BELL, Appellant, vs. GUND, Respondent.

*April 9 — April 30, 1901.*

*Master and servant: Contract of employment: Consent to discharge: Evidence.*

1. Where a servant, employed for a definite term, consents to the termination of his relations with his employer when he is discharged, he cannot recover wages for the balance of his term.

2. In an action by a servant, who claimed to have been wrongfully discharged before the expiration of his term of employment, to recover for wages which accrued after the discharge, the evidence — stated in the opinion — is *held* to sustain a finding of the jury that such termination was by the consent of both parties.

3. In such a case, letters of the servant, written after his discharge but before the expiration of the term, are competent as admissions on his part, so far as they are inconsistent with his claim that he was discharged against his will.

APPEAL from a judgment of the circuit court for Bayfield county: JOHN K. PARISH, Circuit Judge. *Affirmed.*

Action to recover on a contract of hiring. Plaintiff claimed he was employed by defendant's general manager of a sawmill business at Iron River, Wisconsin, as bookkeeper in such business for three years, from November 20, 1894, at $1,000 for the first year and $1,200 per year thereafter; that he commenced work under such contract and continued till August 1, 1896, when he was discharged without his consent; that he was able to earn, during the rest of

his term of employment, but $549.66, leaving $1,177.68 as the balance which he could have earned but for such discharge. The action was to recover that sum on the facts stated.

Defendant denied that his general manager had authority to hire plaintiff for three years, admitted that plaintiff was hired for a time as bookkeeper, and that he served in that capacity from November 20, 1894, till he was discharged, August 1, 1896, and alleged that he left such employ voluntarily, and that he was paid in full for services actually rendered and a consideration in settlement of his claims under his alleged contract.

The jury found specially that defendant's agent, pretending to have authority so to do, engaged plaintiff as bookkeeper for defendant in his saw-mill business, for three years; that the agent did not have such authority; that such want of authority was never waived by defendant; that plaintiff received pay for all services actually rendered under such contract, and that he voluntarily ceased work August 1, 1896.

Judgment was rendered for defendant and plaintiff appealed.

For the appellant there was a brief by *Alvord & Dillon*, and oral argument by *E. C. Alvord*.

For the respondent there was a brief by *Bleekman & Bloomingdale*, and oral argument by *F. H. Bloomingdale*.

MARSHALL, J. Several questions are discussed in the brief of appellant's counsel, and presented for consideration on appropriate assignments of error; but the conclusion which has been reached as to one of them renders the others immaterial. If plaintiff consented to the termination of his relations with defendant when he was discharged, his subsequent claim for wages for the balance of his alleged term was without any foundation, even if it be a fact that when

he was discharged a binding contract for such term existed. So if the finding of the jury on that question cannot be disturbed, a discussion of other questions is useless.

We should say in passing that, while there are assignments of error on rulings on evidence, they do not challenge any such ruling bearing on the vital question mentioned.

Counsel for plaintiff maintain that there was no evidence tending to show that plaintiff consented to terminate his contract, except some letters written by him between June 14, 1896, and August 30, 1896, and that they ought not to be considered because they were written after such termination. There seems to be no foundation for that contention. True, the letters were written after the occurrence that led to the termination of the employment, but not after the latter event. But if it was otherwise, we know of no reason why they were not competent as admissions by plaintiff, so far as inconsistent with his claim that he was discharged against his will. They certainly tended to show that he not only made no objection to such discharge, but that it was with his entire approval. One written July 14, 1896, referred to the circumstance that land was to be deeded to him by defendant and that he was about to engage in the business of farming thereon. In a letter written July 22d, he stated that he should move onto his land by August 15th. In a letter of July 23d, he again spoke of his contemplated farming venture and asked advice about obtaining a team. Other letters show that plaintiff fully matured his plans to take up the business of farming before he was discharged. The mill business had been sold and the need for plaintiff's services was about to cease, when most of the letters were written. They all indicate that plaintiff had fully settled upon the plan to go to farming when such need was at an end. There is not a hint or a suggestion in any of them that he had any right to demand employment by defendant

for any certain time, or that the approaching final termination of his employment was viewed as a pending violation of his rights. In the letter written August 23d, he spoke of working on his land and of a contemplated winter's work thereon, cutting cedar timber and preparing it for market, stating that, though it would take him a couple of weeks to get in fair condition for that kind of labor, he thought he should like the change and suggested that defendant lend kindly aid in finding a market for his cedar. In a letter of August 16th he expressed satisfaction with his change of vocation. That was followed by other letters of the same tenor. October 22d he wrote requesting a check for the balance of his wages, and stated that his hopes for business in getting out ties had been somewhat disappointed and that in his opinion he would have to look for a job somewhere. Up to that time, it seems, the expected pleasure and profit of farming and obtaining an income from the cedar on his land had failed to materialize. His hopes in that regard were so impaired by experience that he began to think the position of a bookkeeper preferable to his new vocation. Theretofore all the letters written to defendant were in a very friendly and cheerful vein, clearly recognizing the fact that the relations between them as employer and employee were at an end. But on November 23, 1896, the scene entirely shifted. He then, by a short letter, pointedly informed defendant that he should hold him liable on the three-year contract. Defendant testified, in substance, that after a conclusion was reached to sell the mill business, he talked the matter over with plaintiff, and that the latter then said he was sorry to lose his job, but had been thinking for some time that he would like to go farming; that after the sale was made he, defendant, had a conversation with plaintiff, when for the first time he was informed of the alleged three-year contract; that plaintiff was then unable to, or at least did not, produce the contract; that de-

fendant notified him that he was ignorant of any such
contract and would not recognize it as his if it existed; that
the result of the dispute, and of plaintiff's desire to become
the owner of lands owned by defendant, for a farm, was
that a full settlement was arrived at by the terms of which
plaintiff agreed to release all claims against defendant and
the John Gund Lumber Company, particularly all claims
under the alleged three-year contract, and defendant agreed
that plaintiff should have six forties of land; that his serv-
ices should not terminate till August 1, 1896; that he should
have, in addition to wages, $150, and interest for three years
on the deferred payments upon the land; and that the set-
tlement was fully carried out.  Plaintiff admitted that a
conversation occurred at the time stated by defendant but
denied any settlement of his claim under the three-year con-
tract.  He admitted payment of the extra $150, but claimed
that such payment was for extra services.  There was con-
siderable other evidence on the subject.  A particular ref-
erence to it would not materially change the situation
exhibited by what has been said.  The letters written by
plaintiff, standing alone, certainly indicate that he left de-
fendant's employ without objection.  If the testimony of
defendant is true — and no reason is perceived why the jury
could not reasonably have so concluded — then the termi-
nation of the employment was by consent of both parties.
Taking all the evidence together there is no room for rea-
sonable controversy but that the question of whether there
is credible evidence to support the findings of the jury must
be answered in the affirmative.  That requires an affirmance
of the judgment appealed from.

*By the Court.*— The judgment is affirmed.